IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

## JAMES EDWIN HEATHFIELD v. DINA ROSE HAWKINS HEATHFIELD

**Direct Appeal from the Circuit Court for Polk County**
**No. 3450    Lawrence H. Puckett, Judge**

_____

**No. E1999-00604-COA-R3-CV - Decided May 25, 2000**

_____

This is a divorce case.  The trial court granted the wife's counterclaim for divorce and divided the parties' property.  The wife appeals the court's division of property, arguing that it inequitably allocates substantially more property to the husband than to her.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

SUSANO, J., delivered the opinion of the court, in which FRANKS and SWINEY, JJ., joined.

Randy G. Rogers, Athens, Tennessee, for the appellant, Dina Rose Hawkins Heathfield.

B. Prince Miller, Jr., Cleveland, Tennessee, for the appellee, James Edwin Heathfield.

**OPINION**

I. *Background*

The trial court dissolved a six-year marriage.  Prior to their November, 1992, marriage, appellant Dina Rose Hawkins Heathfield ("Wife") had been married three times, while appellee James Edwin Heathfield ("Husband") had been married once.  Wife had two children from her prior marriages, one of whom lived with the parties during the initial years of their marriage.  Husband had no children.

Approximately a year after their wedding, the parties separated for the first time.  During this separation, which lasted "a couple of months," Wife filed for divorce but the parties eventually reconciled.  After another year or two, the parties separated again for two or three months before

reconciling. The parties separated for the third and final time on March 13, 1998, and this action was commenced three days later.[1]

When the parties married, Wife owned a 1985 IROC automobile and a catalog of about 50 songs that she had written. The songs have never generated income. Just prior to marrying Husband, Wife had contracted to purchase a parcel of unimproved real property in McMinn County ("the McMinn County property") for $15,000. She had made a down payment of $500 and had made an unspecified number of monthly payments of $250 prior to getting married. Husband testified that he also made some of the monthly payments on the McMinn County property before their marriage.

Husband entered the marriage with, among other things, (1) several vehicles; (2) an airplane; (3) a parcel of property in Ohio;[2] (4) a parcel of property in Polk County ("the Polk County property"), with a debt of approximately $42,000; (5) a job at which he earned a salary of close to $55,000; and (6) a 401k worth $18,000.

As stated previously, the parties separated three times during their marriage and reconciled twice. Subsequent to the parties' first reconciliation, Husband gave Wife $10,000, which she used to pay off the remaining debt on the McMinn property. Wife then converted her interest in the McMinn County property into a tenancy by the entireties with Husband, and Husband did likewise with respect to the Polk County property. Shortly thereafter, the parties decided to build some townhouses on the McMinn County property, and they sought and received a loan of $115,000 for this purpose.

During the building of the project, the contractor absconded with approximately $50,000 paid to him by the parties. A short while later, the parties separated for the second time. Faced with an obligation to pay back the original loan and a shortage of funds with which to complete the project, Husband endeavored to obtain extra financing to complete the project. He re-financed the Polk County property, increasing the pre-marital debt of $42,000 to $100,000. He also sold his interest in the Ohio property for approximately $22,000, borrowed $15,000 against his 401k, and borrowed approximately $20,000 from his family. He completed the townhouses with these funds.

---

[1]The record is replete with each party's testimony regarding the misconduct of the other. Husband testified as to Wife's alleged drug and alcohol abuse and inappropriate contact with another man. Wife testified as to several instances of Husband's intentional physical abuse and threats against her and her daughter, including an incident occurring a few months before the parties' final separation during which Husband broke Wife's nose. Wife's sole issue on appeal is "whether the [trial] court made a fair and equitable division of the equities of the parties." Fault cannot be considered in making an equitable division of property, *see* T.C.A. § 36-4-121(a)(1)(1996). Therefore, we have ignored the testimony regarding the allegations of fault.

[2]Husband owned this property as a tenant in common with one of his brothers.

After the project was completed, the parties again reconciled. With the townhouses completed, the parties were able to re-finance the McMinn County property. They used the extra money they received to repay loans, including Husband's loan from his family and credit card debt. A portion of the extra money was used to buy Wife a two-carat diamond ring and some band equipment. The debt against the McMinn property was approximately $135,000 at the time of the divorce hearing.

During the course of the marriage, the great majority of the marital expenses were paid for with the money Husband earned from his job as a marketing representative for Zomba & Jive Records. Husband's salary averaged approximately $65,000 for the years 1992 to 1997.

Wife earned very little money working outside the home. The income she did earn -- a few hundred dollars a few times over the six-year marriage -- was earned by cutting hair, selling horses she and Husband bought to train and re-sell, selling leather crafts she had made, or selling produce.[3] Much of Wife's energy and time was devoted to her attempts to establish a singing career. At one point, Wife traveled to Chicago to perform, but the "tour" was unsuccessful. The parties also built a rehearsal hall in the guest house on the Polk County property in an attempt to jump-start Wife's singing career. These attempts were, however, unfruitful.

Wife's contributions to the marital home included some wallpapering, painting, landscaping, and helping to create a swimming hole on the property. She also assisted Husband in hauling hay and in clearing and cutting the woods on the McMinn County property.

The divorce hearing was held on October 9 and 13, 1998. The trial court granted Wife a divorce and divided the parties' property. The following schedule sets forth our understanding of the trial court's division of the marital property:

---

[3]This does not include the approximately $2,000 Wife collected as rental income from the McMinn County property in 1997.

| Assets and Debts | Total | Husband | Wife |
|---|---|---|---|
| McMinn County property -- net[4] | $ 85,176 | $ 42,588 | $42,588 |
| Polk County property -- net[5] | 99,081 | 99,081 | |
| 401k -- net[6] | 71,180 | 71,180 | |
| Wife's interest in 401(k) | | <10,000> | 10,000 |
| Airplane -- net[7] | 7,608 | 7,608 | |
| Miscellaneous personal property[8] | 17,450 | 5,200 | 12,250 |
| Miscellaneous debts[9] | <15,715> | 15,715 > | |
| Total | $264,780 | $199,942 | $64,838 |

---

[4]The trial court found the McMinn County property to have a value of $220,000 and an existing debt of $134,824, leaving a net value of $85,176. The court awarded half of the net worth of the property to each party and awarded Wife the right to live in one of the units. Each of the parties was burdened with half of the debt.

[5]The trial court found the Polk County property to have a value of $200,000 and a debt of $100,919, leaving a net value of $99,081. Husband was ordered to pay the debt.

[6]The 401k had a value at the time of the hearing of $97,180. The court deducted $18,000 -- the value of the 401k at the time of the marriage -- from this amount. The court further deducted $8,000 to account for the outstanding debt against the 401k, a debt that was assigned to Husband. This left a net amount in the marital estate of $71,180. The court then stated that it would have given half of this amount -- $35,590 -- to Wife, but reduced that figure to account for Husband being forced to borrow some $58,000 against the Polk County property in order to complete the townhouse project on the McMinn County property. Accordingly, the trial court order Husband to pay Wife $10,000 and awarded Husband the net amount of the 401k.

[7]The airplane was found to have a value of $34,000 and a debt against it of $26,392. The debt was assigned to Husband.

[8]The court awarded each party half the value of a lost two-carat diamond ring, in the event the ring was later found or insurance proceeds were received for it. No value is assigned for the ring in the above schedule.

[9]Although the trial court orally decreed that Wife would be responsible for a dental bill of $75, the trial court's order assigned this bill to Husband. "A Court speaks only through its written judgments, duly entered upon its minutes. Therefore, no oral pronouncement is of any effect unless and until made a part of a written judgment duly entered." *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. Ct. App. 1979). Thus, the figure of $15,715 includes the dental bill.

## II. *Standard of Review*

Since this is a non-jury case, our review is *de novo* upon the record of the proceedings below. That record comes to us with a presumption of correctness as to the trial court's factual findings, a presumption that we must honor unless the evidence preponderates against those findings. Rule 13(d), Tenn. R. App. P.

Wife's sole issue is "whether the court made a fair and equitable division of the equities of the parties." She "does not quarrel with property values," but rather argues that the division is inequitable because it gives Husband a substantially greater share of the marital assets than it gives to Wife. She suggests that she be given the McMinn County property and be solely responsible for the debt on that property. Husband argues that the trial court properly divided the property in light of the duration of the marriage and the relative contributions of the parties to the marital estate.

## III. Applicable Law

When addressing the property of divorcing parties, a court must first classify the property as marital or separate. *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Once classified, the separate property is awarded to the party to whom it is separate in nature, and the marital property is divided between the parties in an equitable fashion. *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996).

"Trial courts have wide latitude in fashioning an equitable division of marital property." *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). This must be done in accordance with the statutory factors found in T.C.A. § 36-4-121(c) (1996). Marital fault cannot be considered. T.C.A. § 36-4-121(a)(1) (1996).

"[A]n equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson*, 769 S.W.2d at 859. Appellate courts are to defer to a trial court's division of marital property unless the trial court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

One of the factors enumerated in T.C.A. § 36-4-121(c) is the duration of the marriage. If the marriage is of relatively short duration, "it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson*, 769 S.W.2d at 859. When dividing the assets of a short marriage, the spouses' "contributions to the accumulation of assets during the marriage is an important factor...[and] the significance and value of a spouse's non-monetary contributions is diminished...." *Id.* (Citation omitted).

## IV. *Analysis*

This case is controlled by *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988). In *Batson*, the parties were married for seven years and they, "[o]n several occasions, [ ] separated and began divorce proceedings, only to dismiss them later." *Id.* at 851, 853. We found, under the circumstances in *Batson*, "that the Batsons' marital property need not be divided equally and that the parties should, in large measure, be restored to their pre-marriage financial condition." *Id.* at 859. Accordingly, we modified the trial court's judgment to allocate the marital property $397,404 to the husband and $21,165 to the wife. *Id.* at 860. We stated that "[t]he adjusted property division leaves the parties with approximately the same net worth they had prior to the marriage and preserves, in large measure, the relationship between their respective net worths that existed [before they were married.]" *Id.* at 861.

In the instant case, Husband and Wife were married for only six years and during much of that time the parties were separated and contemplating divorce. At the time of their marriage, Husband's salary was $53,400 and Wife earned income of an amount small enough to exempt her from filing a federal income tax return. During the marriage, the couple primarily supported themselves with Husband's income. Husband contributed financially to Wife's various attempts to earn money by, among other things, singing, selling crafts she had made, and by opening a beauty salon. Wife's financial contributions to the marriage -- a few hundred dollars here and there over a six-year period -- as well as her non-monetary contributions were relatively small. Though she did do some wallpapering, painting, landscaping, and other maintenance of the real property, most of her time and energy was spent in attempting, and failing, to establish a singing career.

With respect to the real property involved in this case, it is clear to us that the McMinn County property and the Polk County property were converted to marital property. Husband and Wife each intentionally transferred an individual interest in their respective properties to the couple as a tenancy by the entireties. This creates a rebuttable presumption of a gift to the marital estate. *See Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995). The evidence in this case is insufficient to rebut the resulting presumption that each spouse made a gift to the marital estate by doing so. In any event, the evidence is clear that Husband substantially contributed to the preservation and appreciation of the McMinn County property by leveraging other properties, including his own separate property, to complete the townhouse project. Wife's contribution to the McMinn County property and to the improvement of the Polk County property, primarily in the form of wallpapering and painting, is relatively insignificant in importance.

We cannot say that the trial court's division of the marital property giving Husband $199,942 and Wife $64,838 is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. Wife entered the marriage with a car, a catalog of songs that had not generated any income, and title to a piece of property for which she had just begun to pay. She leaves the marriage with $64,838. We are of the opinion that the trial court's division "leaves the parties with approximately the same net worth they had prior to the marriage," *Batson*, 769 S.W.2d at 861.

## V. *Conclusion*

The judgment of the trial court is affirmed. This case is remanded for enforcement of the judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant.